IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| FCSTONE LLC,<br><br>    Plaintiff,<br><br>vs.<br><br>JOSEPH BUCKLEY and CHRISTIAN RIEHLE,<br><br>    Defendants. | No. 4:11-cv-00551 – JEG-TJS<br><br>O R D E R |

Now before the Court is a Motion to Dismiss for Lack of Personal Jurisdiction or, in the Alternative, to Dismiss for Forum Non Conveniens brought by Defendants Joseph Buckley (Buckley) and Christian Riehle (Riehle) (collectively, Defendants). Plaintiff FCStone LLC[1] (FCStone) resists. The parties have not requested a hearing; thus, the matter is fully submitted and ready for disposition.

## I. PROCEDURAL AND FACTUAL HISTORY[2]

FCStone, an Iowa corporation providing comprehensive risk management consulting services in the commodities market, brought this action against its former employees Buckley and Riehle, alleging that they breached their employment contracts by violating the non-competition and non-disclosure agreements contained therein. FCStone avers that Defendants, both Illinois residents previously employed in FCStone's foreign currency trading division in Chicago, Illinois, abruptly resigned on October 31, 2011, and then misappropriated FCStone's trade

---

[1] The briefing of the parties reflects that there are numerous "FCStone Group, Inc." entities including "FC Stone, L.L.C., FGDI, L.L.C., and FCStone Trading, LLC." Defs.' Br. 2, ECF No. 13-2. For the purposes of this Order, Defendants will be addressed simply as employees of "FCStone."

[2] When, as here, the Court "does not hold a hearing and instead relies on pleadings and affidavits, then [the Court] must look at the facts in the light most favorable to the nonmoving party and resolve all factual conflicts in favor of that party." Epps v. Stewart Info. Servs. Corp., 327 F.3d 642, 646-47 (8th Cir. 2003). Accordingly, the Court will view the facts in the light most favorable to FCStone.

secrets in violation of their fiduciary duties and the Computer Fraud and Abuse Act. In further-ance of this misappropriation, Buckley allegedly used FCStone's computers and systems to email three pieces of FCStone's proprietary information[3] to his personal email account. FCStone alleges that Defendants now are employed by competitors.

On November 11, 2011, FCStone, through its in-house counsel, sent letters to Defendants requesting that they affirm their compliance with the non-compete and non-disclosure clauses included in their employment agreements with FCStone. Neither Defendant complied. Instead, after receiving the letter, Buckley called FCStone's counsel to inform FCStone that he had retained counsel. On November 15, 2011, Daniel Austin, acting as counsel for Buckley and Riehle, called FCStone and stated that Defendants would only confirm their intention to abide by the employment contracts if they received a release from FCStone. Following Defendants' failure to affirm their compliance with their employment agreements, FCStone filed its Complaint on November 22, 2011.

> In its Complaint, FCStone asserts that personal jurisdiction is proper
>
> because this dispute arises out of Defendants' employment with a citizen of Iowa and the employment agreements at issue are governed by Iowa law. Moreover, Defendants directed their action to Iowa[] by communicating, individually and through counsel, with FCStone in Iowa, regarding the acts at issue here and the causes of action therefore arise from Defendants' contacts with Iowa.

Compl. ¶ 5, ECF No. 1. Defendants, having timely filed a Motion to Dismiss, contend that they lack sufficient contacts with Iowa to support a finding of personal jurisdiction, as they were hired by FCStone in Illinois, signed their employment agreements in Illinois, worked exclusively in the Chicago office, never traveled to Iowa as part of their employment, never communicated with supervisors or subordinates in Iowa, never received training in Iowa, and generally engaged in

---

[3] In its Complaint, FCStone identifies the alleged misappropriated items as "FCStone's Trade Blotter, FCStone's Revenue Stream, and FCStone's Pricer." Compl. ¶ 31, ECF No. 1. Defendants identify these three items as computer programs. Def.'s Reply 3 n.2, ECF No. 19.

their business exclusively in Illinois. In the alternative, Defendants request the Court dismiss under the doctrine of forum non conveniens, as Defendants, the sources of proof, most if not all witnesses, and the alleged misappropriation all occurred or are located in Illinois.

## II. DISCUSSION

### A. Rule 12(b)(2) Standard

"To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that personal jurisdiction exists, which is accomplished by pleading sufficient facts 'to support a reasonable inference that the defendant[s] can be subjected to jurisdiction within the state.'" K-V Pharm. Co. v. J. Uriach & CIA, S.A., 648 F.3d 588, 592-93 (8th Cir. 2011) (quoting Dever v. Hentzen Coatings, Inc., 380 F.3d 1070, 1072 (8th Cir. 2004)). When the defendants deny jurisdiction, the plaintiff bears the burden to prove facts supporting personal jurisdiction. Wells Dairy, Inc. v. Food Movers Int'l, Inc., 607 F.3d 515, 518 (8th Cir.), cert. denied, 131 S. Ct. 472 (2010).

In a diversity case, such as here, personal jurisdiction over nonresident defendants exists "only to the extent permitted by the long-arm statute of the forum state and by the Due Process Clause." Romak USA, Inc. v. Rich, 384 F.3d 979, 984 (8th Cir. 2004) (quoting Dever, 380 F.3d at 1073). Under Iowa's long-arm statute, "Iowa's jurisdictional reach [extends] to the widest due process parameters allowed by the United States Constitution." Wells Dairy, 607 F.3d at 518 (quoting Hammond v. Fla. Asset Fin. Corp., 695 N.W.2d 1, 5 (Iowa 2005)). Thus, this Court need only consider "whether the exercise of personal jurisdiction comports with due process." Id.

"The touchstone of the due-process analysis remains whether the defendant[s] ha[ve] sufficient 'minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG, 646 F.3d 589, 594 (8th Cir. 2011) (third alteration in original)

(quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)) (internal quotation marks omitted). "The defendant[s] must have engaged in 'some act by which the defendant[s] purposefully avail[ed] [themselves] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" K-V Pharm., 648 F.3d at 592 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)). "This purposeful-availment requirement is met where the 'defendant[s'] conduct and connection with the forum State are such that [they] should reasonably anticipate being haled into court there." Id. (quoting Burger King, 471 U.S. at 474).

"The minimum contacts necessary for due process may be the basis for either 'general' or 'specific' jurisdiction." Pangaea, Inc. v. Flying Burrito LLC, 647 F.3d 741, 745 (8th Cir. 2011) (quoting Johnson v. Arden, 614 F.3d 785, 794 (8th Cir. 2010)). In the present case, FCStone alleges only that Iowa has specific jurisdiction over Defendants, which is established by showing that "defendant[s] ha[ve] purposefully directed [their] activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." Burger King, 471 U.S. at 472 (internal quotation marks and citations omitted).

The Eighth Circuit has enumerated five factors that a court must consider when determining whether the requisite minimum contacts exist:

> (1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts; (3) the relationship of the cause of action to the contacts; (4) the interest of [the forum state] in providing a forum for its residents; and (5) the convenience or inconvenience to the parties.

K-V Pharm., 648 F.3d at 592 (alteration in original) (quoting Johnson, 614 F.3d at 794). While "[s]ignificant weight is given to the first three factors," Dever, 380 F.3d at 1074, the Court must "look at all of the factors and the totality of the circumstances in deciding whether personal jurisdiction exists." K-V Pharm, 648 F.3d at 592-93.

4

**B. Application of Rule 12(b)(2)**

Defendants claim that they have insufficient contacts with Iowa to satisfy the due process requirements for personal jurisdiction. Looking to the Complaint, Defendants allege that FCStone enumerates only four bases for personal jurisdiction, each of which they aver proves insufficient. In its Response, while contesting Defendants' argument, FCStone provides a new basis for personal jurisdiction by alleging the "theft of trade secrets and misuse of computer servers, both of which were located in Iowa." Resp. Br. 4, ECF No. 18. Defendants, in their Reply filed on January 30, 2012, challenge the presentation of this new factual basis, as it does not appear in the Complaint and is not substantiated with the requisite evidentiary showing. On February 7, 2012, without leave of court, FCStone filed a declaration in which Javier Lozano (Lozano), the head of core development for FCStone, stated that "[t]he email servers used by Joseph Buckley and Christian Riehle during their employment with FCStone are located in Des Moines, Iowa," and therefore "all e-mails sent to and from the email accounts of [Defendants] were housed on the servers in Iowa." Lozano Decl. 1, ECF No. 20. On February 10, 2012, Defendants filed an objection to Lozano's declaration based on its untimeliness and on Lozano's status as a non-party in this matter.[4] Defendants further note that the declaration fails to support FCStone's allegations, as the declaration speaks only to the location of servers used for work-related email accounts, not to the location of any trade secrets allegedly stolen by Defendants.

As a preliminary matter, the Court notes that "[w]hen considering whether personal jurisdiction exists . . . it is permissible to consider matters outside the pleadings." Stevens v. Redwing, 146 F.3d 538, 543 (8th Cir. 1998); see also Romak USA, 384 F.3d at 983 ("[T]o defeat

---

[4] Without citation to authority, Defendants challenge the standing of Mr. Lozano to file a declaration in the case. However, the document (ECF No. 20), though arguably untimely and without leave of court, was clearly submitted by counsel for Plaintiff in support of the Plaintiff's argument. The Court therefore rejects this objection.

a motion to dismiss for lack of personal jurisdiction, the nonmoving party need only make a prima facie showing of jurisdiction[,] and may do so by affidavits, exhibits, or other evidence." (second alteration in original) (internal quotation marks and citation omitted)). While it is FCStone's burden to "state sufficient facts in the complaint to support a reasonable inference that [Defendants] can be subject to jurisdiction within the state," a challenge of personal jurisdiction is "tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and in opposition thereto." Dever, 380 F.3d at 1072 (internal quotation marks and citations omitted). Accordingly, this Court is not limited only to those bases raised by FCStone in its Complaint. However, "conclusory allegation[s] [are] not enough to establish personal jurisdiction." Miller v. Nippon Carbon Co., Ltd., 528 F.3d 1087, 1092 (8th Cir. 2008).

While FCStone's Response avers that its servers and trade secrets are located in Iowa, FCStone fails to support these new claims with affidavits, exhibits, or other evidence. Upon Defendants' exposure of this failing, FCStone, untimely and without leave, filed a declaration eight days after the present motion had been fully briefed.

"The decision whether to consider documents that are untimely filed rests within the sound discretion of the district court." Symington v. Daisy Mfg. Co. Inc., 360 F. Supp. 2d 1027, 1030 (D.N.D. 2005) (citing Williams v. Thomson Corp., 383 F.3d 789, 791 (8th Cir. 2004)). While FCStone was procedurally in error, the late filing merely placed in declaration form information already presented to Defendants in argument. See id. (holding that, though plaintiff's filing was seven days late, the "substance of th[e] report" was already before the defendant, and the untimely filing "merely placed this same information in affidavit form"). More importantly and less prejudicial, Lozano's declaration fails to establish the new basis for personal jurisdiction argued by FCStone in its Response to Defendants' Motion to Dismiss. Accordingly, exclusion of the declaration is ultimately unnecessary.

Lozano's declaration asserts only that any email sent by Defendants at work from their email accounts would be "housed on" FCStone's servers in Iowa. Lozano does not attest that the proprietary information at issue is stored on the servers in Iowa, nor that Defendants accessed trade secrets from the servers. Further, with regard to Riehle, FCStone fails to allege that he sent any emails at all, apparently relying upon the three emails sent by Buckley, and any future use of the information contained therein, to establish personal jurisdiction over Riehle.

Accepting the assertions made in Lozano's declaration, the Court is left with allegations that confidential and proprietary information from some unidentified location, to which the Defendants may or may not have originally had authorized access, was contained in three email messages that passed through the servers in Iowa to a private email account in Illinois, with no allegation the Defendants knew the Iowa located servers would be involved. As more fully discussed below, the Court finds this is too attenuated to establish personal jurisdiction. As previously stated, FCStone fails to connect these emails to Riehle; therefore, the Court need only consider them insofar as they might impact personal jurisdiction over Buckley.

### 1. The Email Server in Iowa

FCStone cites a number of cases from other jurisdictions to support its proposition that the mere passage of emails through a server in Iowa is sufficient to satisfy personal jurisdiction. However, none of these cases, which are non-binding, district court decisions from outside of the Eighth Circuit, have been addressed or followed by the Eighth Circuit Court of Appeals, nor have they been adhered to by district courts within this circuit. Moreover, the cases disclose greater involvement with the forum jurisdiction than the narrow facts before this Court.

FCStone relies on the district court's holding in D.C. Micro Development, Inc. v. Lange, 246 F. Supp. 2d 705 (W.D. Ky. 2003), where the court found sufficient minimum contacts existed to establish personal jurisdiction over the defendant. Noting that the alleged facts before the court resulted in "an extremely close case," the court went on to find the defendant met the

purposeful availment requirement because he hacked into a server in the forum state, misappropriated information, then used that information to solicit residents within the forum state, which harmed the plaintiff company incorporated in the forum state. Id. at 708, 712. The plaintiff supported these allegations with affidavits attesting to the breach of the server and listing 150 residents who had received the mass email sent by the defendant. Id. at 709-10. Here, FCStone merely alleges in its Response that Buckley sent emails to himself, which contained trade secrets, without an allegation of further contact with any persons within the state of Iowa.

The cases FCStone relies on differ from the present circumstance in numerous ways, including the number of contacts the accused had with the server found in the forum state, see, e.g., Verizon Online Servs., Inc. v. Ralsky, 203 F. Supp. 2d 601, 610 (E.D. Va. 2002) (finding the exercise of personal jurisdiction was proper when defendant allegedly had "transmitted millions of unsolicited commercial e-mails to and through [plaintiff's] servers in [the forum state] that amounted to the commonlaw [sic] tort of trespass to chattels"), and the effect those contacts had on persons within the forum state, see, e.g., Bus. Info. Sys. v. Prof'l Governmental Research & Solutions, Inc., No. Civ.A.1:02CV00017, 2002 WL 32747668, at *10-11 (W.D. Va. Oct. 10, 2002) (finding the exercise of personal jurisdiction was proper where plaintiff alleged that defendant had, on numerous occasions, tortiously accessed a server in the forum state and retrieved thousands of records for their paid subscribers, which affected plaintiff's customers found in the forum state); Info. Techs. Int'l, Inc., v. ITI of N. Fla., Inc., No. 01 C 4668, 2001 WL 1516750, at *7 (N.D. Ill. Nov. 28, 2001) (finding Plaintiff made a prima facie showing of personal jurisdiction based upon the Illinois choice-of-law clauses contained in the employment contracts, the unauthorized access of servers in Illinois, the issuing of emails to customers in Illinois, and the unauthorized access to and shutting down of a web site sponsored by an Illinois-based non-profit organization). While the Court recognizes the threshold of a prima facie showing of personal jurisdiction is not particularly high, requiring only "sufficient facts to

support a reasonable inference that the defendant[s] can be subjected to jurisdiction within th[is] state," K-V Pharm., 648 F.3d at 592-93 (internal quotation marks and citation omitted), the Court is unable, on this record, to conclude that such a showing has been made.

In paragraph thirty-four of the Complaint, FCStone alleges that Buckley exceeded his authorized access to the company computers and systems. However, a rational reading of that allegation in the context of the entire Complaint in the light most favorable to the Plaintiff is that Buckley supposedly exceeded this access only by sending three emails that contained proprietary information through the server in Iowa. The Court cannot discern from the Complaint that the trade secret information was taken from the server rather than simply available to Buckley during his ordinary work activities in Illinois, or that the act of obtaining the alleged secret information was in excess of his authority as an employee of the company. As alleged, it was in the act of disseminating the proprietary information outside the company that the Defendants exceeded their authority. Certainly nothing in the Complaint suggests that sending an ordinary email was beyond Buckley's authorized access to the company computer system. Thus, the only operational connection with the servers in Iowa was the passage of a small number of emails through the server, with no specific allegation that Buckley even knew the location of the server, and that those emails happened to contain information, from some unknown source, that FCStone regards as secret. This Court cannot so dilute the traditional protections found in the requirement that a defendant must have purposefully directed its activities at a state. See Wells Dairy, 607 F.3d at 518; see also Ray v. Experian, No. 3:07-CV-1114-R, 2007 WL 4245459, at *3 (N.D. Tex. Nov. 30, 2007) ("[A]ccessing or sending data in North Carolina to or from a database which happens to be headquartered in Texas is not a *purposeful* availment by [a defendant] of the benefits and protections of Texas' laws."). Ultimately, the simple passage of three emails that allegedly contained trade secrets from some unidentified location through the company server in Iowa does not generate the requisite reasonable inference.

9

## 2. The Effects Test Doctrine

Relying on EFCO Corp. v. Aluma Systems, USA, Inc., 983 F. Supp. 816, 821 (S.D. Iowa 1997), FCStone also argues that personal jurisdiction over Defendants is proper because of "the effects test doctrine," which establishes that "personal jurisdiction may be extended to cover out-of-state actors whose acts are intentionally directed to harm in-state plaintiffs." Courts have interpreted this effects test doctrine, established in Calder v. Jones, 465 U.S. 783 (1984), as requiring "(1) the defendant[s'] acts were intentional; (2) these actions were uniquely or expressly aimed at the forum state; and (3) the brunt of the harm was suffered in the forum state, and the defendant[s] knew th[e] harm was likely to be suffered there." Pro Edge, L.P. v. Gue, 374 F. Supp. 2d 711, 729 (N.D. Iowa 2005) (quoting Roquette Am., Inc. v. Gerber, 651 N.W.2d 896, 900 (Iowa Ct. App. 2002)); see also Johnson, 614 F.3d at 796. However, Calder's effects test doctrine does not require this Court to "abandon the five-part test" employed by the Eighth Circuit; rather, it "requires the consideration of additional factors when an intentional tort is alleged." Dakota Indus., Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1391 (8th Cir. 1991). Further, the Eighth Circuit construes the effects test narrowly. Johnson, 614 F.3d at 797.

At this juncture, the Court must accept as true FCStone's claim that Defendants' acts were intentional. However, FCStone has failed to sufficiently allege that Defendants' conduct was expressly aimed at the forum state or that Defendants knew that any resulting harm was likely to be suffered here.

As pled, FCStone simply asserts that it is an Iowa corporation, that its trade secrets have been misappropriated by two out-of-state Defendants, and that harm will be felt within this forum. This Court finds these allegations insufficient to establish personal jurisdiction. See, e.g., Principal Fin. Servs., Inc. v. Big Fin. & Ins. Servs., Inc., 451 F. Supp. 2d 1046, 1061 (S.D. Iowa 2006) ("Given the complete absence of any substantial connection between [defendant] and the state of Iowa, the Court cannot exercise jurisdiction solely because the effects of the alleged

injury may be most strongly felt in Iowa."). Any alleged conspiracy between Defendants, recruitment of other employees, and disclosure of trade secrets to competitors occurred in Illinois. Therefore, the initial and alleged effects were most strongly felt there. Further, there is no indication that Defendants intentionally directed their activities at the forum state. Lindgren v. GDT, LLC, 312 F. Supp. 2d 1125, 1133 (S.D. Iowa 2004) (finding personal jurisdiction could not be found when defendants had not expressly aimed their activities at Iowa). While some level of harm is likely to be felt by FCStone within Iowa, "absent additional contacts, this effect alone will not be sufficient to bestow personal jurisdiction." Hicklin Eng'g, Inc. v. Aidco, Inc., 959 F.2d 738, 739 (8th Cir. 1992) (per curiam); cf Brown v. Kerkhoff, 504 F. Supp. 2d 464, 498 (S.D. Iowa 2007) ("[E]ven when an intentional tort or fraud is alleged to have been specifically or expressly directed at the forum and foreseeably caused the 'brunt' of its harm therein, personal jurisdiction does not necessarily lie.").

Further, this Court finds distinguishable the case upon which FCStone relies. In EFCO Corp., the court noted that the two parties at issue were major competitors in the same market, had been engaged in direct competition for several years, and most certainly knew of each other's centers for operation, thereby establishing that the infringing activities were knowingly and intentionally directed at the forum state. EFCO Corp., 983 F. Supp. at 823 ("In this case, the thing belonged to [plaintiff] and both the person who physically took the information and the company that used it knew who and where [plaintiff] was."). In the present case, there is no allegation that Defendants had any knowledge of FCStone's state of incorporation; all of their alleged interactions with their employer took place in Illinois. As noted by the court in EFCO Corp., "cases involving corporate plaintiffs or other non-corporeal entities can create difficult and intensely case-specific factual determinations." Id. at 821. Here, the facts prove insufficient to support personal jurisdiction over Defendants. See Viasystems, 646 F.3d at 594-95 (finding personal jurisdiction was not proper when defendant's activities were not "uniquely or expressly

11

aimed at the forum state, or performed for the very purpose of having [its] consequences felt in the forum state, in such a way that [defendant] should ha[ve] clear notice that it is subject to suit there" (first and third alteration in original) (internal quotation marks and citations omitted)).

### 3. Personal Jurisdiction as Further Alleged in the Complaint

Even when considered in the aggregate, FCStone's remaining four bases for personal jurisdiction prove insufficient. While Defendants were employees of FCStone, an Iowa corporation, it is axiomatic under the foregoing principles that a plaintiff's citizenship in a state is alone insufficient to establish personal jurisdiction over non-resident defendants. Further, "the mere fact that a non-resident enters into a contract with a resident of the forum state is not sufficient to give the courts therein personal jurisdiction over the non-resident." Int'l Adm'rs, Inc. v. Pettigrew, 430 F. Supp. 2d 890, 896 (S.D. Iowa 2006) (citing Burger King, 471 U.S. at 478). In the present case, there is no indication that Defendants even knew that they were entering into an agreement with an Iowa citizen, as their employment originated and remained in Illinois.

A party is not subjected to a forum simply because his or her attorney places a phone call to that state in the course of negotiating or litigating the arising dispute. Such contact with or between counsel arising in connection with the separation from employment is not a part of the underlying conduct supporting the claim, particularly when the contact was generated by the plaintiff.

This Court also finds the choice of law clauses in the employment contracts insufficient to confer personal jurisdiction over Defendants. Notably, Riehle's employment contract specifies, under the header "Choice of Law," that the agreement "shall be governed by, and construed in accordance with laws of the *State of Illinois*." Compl. Ex. B at ¶ 21, ECF No. 1-2 (emphasis added).[5] Therefore, this factor weighs against a finding of personal jurisdiction with regard to

---

[5] FCStone alleges that Iowa law applies to the agreement with Riehle because the agreement states, in relevant part, "if deemed reasonable by a court of competent jurisdiction, applying

Riehle.  While Buckley's employment contract specifies that the agreement "shall be governed by and in accordance with the laws of the State of Iowa," this provision does not serve as a forum selection clause nor provide a basis to establish personal jurisdiction.  Compl. Ex. A at ¶ 3.B., ECF No. 1-1.  Though a choice-of-law clause is a factor to be considered, see Burger King, 471 U.S. at 482, it is insufficient by itself or in connection with FCStone's other claims, to establish personal jurisdiction.  See Digi-Tel Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd., 89 F.3d 519, 523 (8th Cir. 1996) (affirming the district court's holding that numerous letters and faxes, several telephone calls to the forum state, and a choice-of-law provision were insufficient to subject the defendant to personal jurisdiction in the forum state).

### 4. The Eighth Circuit Factors

FCStone claims that its own citizenship, the existence of the employee contract, the tortious actions that allegedly occurred in Illinois, and one phone call by Defendants' then-acting attorney establishes personal jurisdiction in Iowa over Riehle.  Against Buckley, FCStone adds to its claim by tacking on an additional phone call and three emails and pointing to the choice of law provision provided in Buckley's employment contract.  These attenuated contacts fail to demonstrate the requisite purposefully established minimum contacts.

Under the five factors that this Court must consider when determining whether the requisite minimum contacts exist, it is clear that Defendants are not subject to the personal jurisdiction of this state.  The nature of Defendants' contacts are minimal, consisting of emails, phone calls, and one choice-of-law clause.  These attenuated contacts are also few in number, consisting of just two phone calls and three emails.  While the relationship of these contacts and the cause of action could be significant, Plaintiffs have insufficiently pled the connection of the emails and trade

---

Iowa law, the term of all covenants and restrictions in this Agreement shall be automatically extended for a period of 18 months."  Compl. Ex. B at ¶ 11(f), ECF No. 1-2.  This clause deals exclusively with extending the duration of the agreement and fails to supercede the express choice of law provision.

secrets to the forum state. Further, the "theft" and distribution of trade secrets in Illinois is minimally connected to the contacts with the server located in Iowa. While a state always has an interest in providing a forum for its residents, the fact that FCStone is incorporated in Iowa proves insufficient to establish personal jurisdiction, as the company clearly conducts normal operations with employees elsewhere. See Digi-Tel Holdings, 89 F.3d at 525 ("[Iowa's] interest in providing its residents with a forum cannot make up for the absence of minimum contacts."). Finally, the convenience of the parties weighs slightly against FCStone, as both Defendants live in Illinois, the branch office where the alleged wrongful acts occurred is in Illinois, and the testifying witnesses from said office are located in Illinois. Therefore, after considering the relevant factors, this Court must find that the exercise of specific jurisdiction over the Defendants fails to comport with due process.[6]

## III. CONCLUSION

For the above stated reasons, Defendants' Motion to Dismiss for Lack of Personal Jurisdiction (ECF No. 13) must be **granted**. The above-entitled action must be **dismissed**.

**IT IS SO ORDERED.**

Dated this 24th day of May, 2012.

_____
JAMES E. GRITZNER, Chief Judge
U.S. DISTRICT COURT

---

[6] Because personal jurisdiction over the Defendants is lacking, this Court need not consider Defendants' forum non conveniens argument.